IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DR. ISAAC BRUNSON,              )
                                )
          Plaintiff,            )
                                )
     v.                         )        1:24-cv-240
                                )
LIVINGSTONE COLLEGE, DR.        )
ANTHONY DAVIS, DR. KELLI        )
RANDALL, DR. HASAN CROCKETT,    )
and DR. LAWRENCE QUINNETT,      )
                                )
          Defendants.           )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Dr. Isaac Brunson filed a complaint asserting
claims for relief against Livingstone College and several of its
employees after he was not hired for an Associate Professor
position. (Compl. (Doc. 1).) Before this court are three motions
to dismiss, filed respectively by Defendants Dr. Hasan Crockett
and Dr. Lawrence Quinnett, (Doc. 12), Defendants Livingstone
College and Dr. Anthony Davis, (Doc. 16), and Defendant Kelli
Randall, (Doc. 35). For the reasons stated herein, each of the
motions will be granted.

Also before this court is Plaintiff's motion entitled
"Plaintiff's Objections to Defendants' Motion to Dismiss and
Request for the Court to Order Defendants to Submit a Legitimate

Corporate Disclosure Statement," (Doc. 28). This motion will be denied.

I. **FACTUAL BACKGROUND**

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (citation omitted). The facts, as provided by Plaintiff, are as follows.

Plaintiff, Dr. Isaac Brunson, "applied for the open position of Associate Professor of Music, Concert Choir Director at Livingstone College in October 2022." (Compl. (Doc. 1) at 8.)[1] Plaintiff "received a phone call and offer to interview for the position from Interim Chair of Music, Dr. Lawrence Quinnett." (Id.) Plaintiff participated in an initial interview on November 18, 2022, and was subsequently interviewed five more times between December 2022 and May 13, 2023. (Id.) Dr. Quinnett participated in each of the interviews and was joined at various times by Professor Teresa Moore-Mitchell, Band Director Anthony Jones, Dean of Liberal Arts & Humanities Hasan Crockett, and Vice President of Academic Affairs Kelli Randall. (See id.)

---

[1] Citations in this Memorandum Opinion and Order to documents filed within the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 2 -

Throughout the interview process Plaintiff was "assured" that he would be hired. (Id. at 9.)

In his second to final interview, Plaintiff requested an annual salary of $70,000. (Id. at 8.) Dean Crockett responded that he would present Plaintiff's request to the Vice President of Academic Affairs and "get back to Plaintiff with confirmation." (Id.) At Plaintiff's sixth and final interview, Dean Crockett "confirmed that the salary requested was approved." (Id. at 9.) Dean Crockett "further communicated to Plaintiff that he would be brought on full-time in the Fall semester of 2023," starting with the "summer Music Festival" scheduled for the week of July 31 to August 4, 2023. (Id.)

However, after May 13, 2023, the Livingstone College administrators ceased communications with Plaintiff. (Id. at 9–10, 12.) Plaintiff made calls to Dean Crockett and to Dr. Quinnett "inquiring about his employment status" but received no response. (Id. at 9-10.) Plaintiff visited the school's website and discovered that Livingstone had announced its hiring of a different individual for the position. (Id. at 10.) This other individual was "much younger" than Plaintiff. (Id. at 11.) Plaintiff alleges that Livingstone College "reneg[ed] on

Plaintiff's employment offer,"[2] which "brought great physical, mental, and emotional damage to him." (Id. at 10.)

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter. (Id.) Plaintiff alleges that during the EEOC's investigation, Dr. Quinnett, Dean Crockett, and other "administrators at Livingstone College" presented "libelous and defamatory statements of Plaintiff's person and character" as pretextual justifications "for their rescinding Plaintiff's employment." (Id. at 13.)

_____

[2] Although Plaintiff refers to an employment "offer" several times in his complaint, (see Compl. (Doc. 1) at 10 (alleging that Livingstone College "reneg[ed] on Plaintiff's employment offer"); id. at 11 (alleging that Livingstone "rescind[ed] Plaintiff's original offer of employment")), he also attaches an exhibit explaining that the hiring process concludes when "the President offers the candidate a contract," (Pl.'s Ex. LC2, Academic Positions (Doc. 1-3) at 1, 2 (emphasis added)). Plaintiff does not allege that Livingstone's President, Dr. Anthony Davis, ever offered him an employment contract or that he accepted such an offer. Rather, Plaintiff alleges (1) that he was repeatedly "assured" that he would be hired (without clarifying who provided those assurances), and (2) that Dean Crockett "communicated" to Plaintiff that he would be hired. (Compl. (Doc. 1) at 9; see also id. at 13 (referring to Livingstone's "promises and assurances they made to Plaintiff regarding his employment").) Accordingly, this court does not construe Plaintiff's complaint to allege that he and Livingstone ever entered into an employment contract, either verbal or written. This construction of Plaintiff's allegations is consistent with Plaintiff's ADEA claim for discriminatory "failure to hire" rather than discriminatory "termination," as well as with Plaintiff's state law claim for promissory estoppel rather than breach of contract. (See id. at 4.)

Additional facts will be introduced as necessary and addressed in the analysis section to follow.

## II. **PROCEDURAL HISTORY**

Plaintiff filed a complaint on March 18, 2024. (Compl. (Doc. 1).) On June 27, 2024, Defendants Crockett and Quinnett filed a motion to dismiss, (Doc. 12), and a supporting brief, (Doc. 13). On July 18, 2024, Defendants Davis and Livingstone College filed a motion to dismiss, (Doc. 16), and a supporting brief, (Doc. 17). On August 6, 2024, Plaintiff filed a response brief, (Doc. 21), in which he appears to respond in opposition to both motions.[3] On August 20, 2024, Defendants Crockett and Quinnett filed a reply brief, (Doc. 24), as did Defendants Davis and Livingstone College, (Doc. 25). On August 27, 2024, Plaintiff filed a motion entitled, "Plaintiff's Objections to Defendants' Motion to Dismiss and Request for the Court to Order Defendants to Submit a Legitimate Corporate Disclosure

---

[3] Plaintiff also filed two affidavits on August 6, 2024, (see Docs. 22, 23), in which he largely repeats allegations that he stated in his complaint but also asserts new facts about a voicemail left by Dr. Quinnett, (see Doc. 22 at 1–2). In analyzing the operative Rule 12(b)(6) motions to dismiss, this court's review of the record is limited to: (1) "a review of the allegations of the complaint itself"; (2) "documents that are explicitly incorporated into the complaint by reference"; and (3) documents "attached to the complaint as exhibits." See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016). Plaintiff's affidavits meet none of these requirements and thus will not be considered in this court's analysis of the operative motions to dismiss.

Statement." (Doc. 28.)[4] On September 20, 2024, Defendants Davis and Livingstone filed an amended reply. (Doc. 31.)

On September 19, 2024, Defendant Randall filed a motion to dismiss, (Doc. 35), and a supporting brief, (Doc. 36). On October 3, 2024, Plaintiff filed a response, (Doc. 38), and on October 14, 2024, Defendant Randall replied, (Doc. 39).

Defendant Randall contends that Plaintiff's claims should be dismissed against her pursuant to Rule 12(b)(5) for insufficient service of process. All Defendants contend that Plaintiff has failed to state a plausible claim for relief and that his claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III. <u>MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS</u>

### A. <u>Standard</u>

A Rule 12(b)(5) motion to dismiss "challeng[es] the manner or sufficiency of service of process." <u>Plant Genetic Sys., N.V. v. Ciba Seeds</u>, 933 F. Supp. 519, 526 (M.D.N.C. 1996). "The plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements

---

[4] Plaintiff attached seven exhibits to this filing. (<u>See</u> Docs. 28-1 through 28-7.) For the same reasons as those discussed <u>supra</u> n.3, this court will not consider these exhibits when analyzing the operative motions to dismiss.

of Federal Rule of Civil Procedure 4." <u>Elkins v. Broome</u>, 213
F.R.D. 273, 275 (M.D.N.C. 2003).

> In determining whether the plaintiff has satisfied his
> burden, the technical requirements of service should
> be construed liberally as long as the defendant had
> actual notice of the pending suit. <u>Karlsson v.
> Rabinowitz</u>, 318 F.2d 666, 668-69 (4th Cir. 1963).
> "When there is actual notice, every technical
> violation of the rule or failure of strict compliance
> may not invalidate the service of process. But the
> rules are there to be followed, and plain requirements
> for the means of effecting service of process may not
> be ignored." <u>Armco, Inc. v. Penrod-Stauffer Bldg.
> Sys., Inc.</u>, 733 F.2d 1087, 1089 (4th Cir. 1984); <u>see
> also</u> <u>Tart v. Hudgins</u>, 58 F.R.D. 116, 117 (M.D.N.C.
> 1972) (observing that a liberal interpretation of
> process requirements "does not mean . . . that the
> provisions of the Rule may be ignored if the defendant
> receives actual notice").

<u>Id.</u>

Rule 4 of the Federal Rules of Civil Procedure requires a
plaintiff to serve an individual defendant within the United
States by (A) "delivering a copy of the summons and of the
complaint to the individual personally," (B) "leaving a copy of
each at the individual's dwelling or usual place of abode with
someone of suitable age and discretion who resides there," or
(C) "delivering a copy of each to an agent authorized by
appointment or by law to receive service of process." Fed. R.
Civ. Proc. 4(e)(2). Rule 4 also allows service in a manner that
complies with the law of the "state where the district court is
located or where service is made." <u>See</u> Fed. R. Civ. Proc.

4(e)(1). Georgia law provides the same three methods as Federal Rule 4(e)(2) for service of process of an individual. See Ga. Code § 9-11-4(e)(7). North Carolina law also provides for service of process of an individual by those same three methods "in addition to service by registered or certified mail." Warren v. Petery, No. 1:20CV793, 2021 WL 3293518, at *4 (M.D.N.C. Aug. 2, 2021) (citing N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)).

**B. Analysis**

Defendant Randall seeks dismissal under Rule 12(b)(5), arguing that Plaintiff "attempted to serve Defendant Randall at her workplace" but failed to meet the service requirements of Federal Rule of Civil Procedure 4(e) because "[t]he documents were left with Dr. Randall's secretary who was not authorized to accept service on her behalf." (Doc. 36 at 6.)

In response, Plaintiff contends that Dr. Randall "was duly served by the United States Marshall [sic] Service of Georgia in conjunction with the North Carolina United States Marshalls [sic] Service," and that "[t]he Court has documentation of the service." (Doc. 38 at 7.) The "documentation of the service" that Plaintiff appears to reference confirms that the person served on Dr. Randall's behalf was a "Receptionist" named "Ellon Krol." (See Doc. 30 at 1.) Plaintiff does not contend that this service upon Receptionist Krol comports with the requirements of

- 8 -

Rule 4 but rather argues that "Defendant's attorney will have to ascertain from the North Carolina and Georgia U.S. Marshalls as to why they did not also serve the attorney." (Doc. 38 at 7.)

Plaintiff has failed to carry his "burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4." Elkins, 213 F.R.D. at 275. While not every technical violation of Rule 4 requires dismissal, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Id. (citing Armco, Inc., 733 F.2d at 1089).

Plaintiff's complaint will be dismissed against Defendant Randall without prejudice under Rule 12(b)(5) for insufficient service of process. As discussed infra Section IV, even if Plaintiff had properly served Defendant Randall, his complaint nonetheless fails to state a plausible claim for relief.[5]

---

[5] Nonetheless, this court grants Defendant Randall's motion to dismiss pursuant to Rule 12(b)(5), rather than Rule 12(b)(6), because "[a]bsent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998).

## IV.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.    Standard

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556–57). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Id. This court "draw[s] all reasonable inferences in favor of the plaintiff," see M.P. by & through Pinckney v. Meta Platforms Inc., 127 F.4th 516, 522–23 (4th Cir. 2025), but does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678.

This court liberally construes pro se complaints. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, pro se plaintiffs are still held to the pleading requirements of Iqbal and Twombly, "which requires pleading 'enough facts to state a claim to relief that is plausible on its face.'" See Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008) (citation omitted); see also id. at 304 n.5.

**B.** **Analysis**

Plaintiff asserts three claims for relief in his complaint. First, he asserts a claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq., for discriminatory "failure to hire." (Compl. (Doc. 1) at 3–4, 10–12.) Second, he asserts a claim for promissory estoppel. (Id. at 4, 12–13.) Third, he asserts a claim for defamation. (Id. at 4, 13–14.)

**1.** **Claim I: ADEA Failure to Hire**

As a threshold matter: Plaintiff asserts an ADEA claim against all Defendants, but only Livingstone College is a proper defendant for this claim. Plaintiff alleges that Defendants Davis, Randall, Crockett, and Quinnett are employees of Defendant Livingstone College. (See Compl. (Doc. 1) at 2, 7.) In the ADEA context, "discriminatory personnel actions taken by an employer's agent may create liability for the employer." See

- 11 -

Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir. 1994). However, the ADEA "limits civil liability to the employer" and does not place "personal liability" on those who make "personnel decisions" on behalf of the employer. Id. at 510-11; see also McNeal v. Montgomery Cnty., Md., 307 F. App'x 766, 774 n.6 (4th Cir. 2009) ("[I]ndividual defendants cannot be held liable under the ADEA for 'personnel decisions of a plainly delegable character.'" (citation omitted)). The issue in this case concerns a "personnel decision[] of a plainly delegable character," see McNeal, 307 F. App'x at 774 n.6, namely, the hiring process and ultimate decision not to hire Plaintiff. Accordingly, the Livingstone employees named in this suit are not "proper defendant[s]" for this ADEA claim. See Birkbeck, 30 F.3d at 510-11.

Plaintiff's ADEA claim against Livingstone College is founded upon his allegations that he was repeatedly "assured" that he would be hired but "his offer of employment [was] rescinded" and a "much younger" candidate was hired instead of Plaintiff. (Compl. (Doc. 1) at 9, 11.) Plaintiff alleges that Dr. Quinnett, a "young" professor at Livingstone College, (id. at 10), was "put in charge of the screening process for the open Associate Professor of Music / Concert Choir Director" position, (id.), "manufacture[d] a reason" to question "Plaintiff's

- 12 -

suitability for the position," (id. at 11), "sabotage[d]" Plaintiff's candidacy, (id.), and "made haste to hire his younger . . . friend for the position," (id.). Plaintiff also alleges that he "would have been coming to Livingstone College with much more experience and knowledge of developing and directing a music department" than the younger candidate. (Id.)

"The ADEA prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age 'because of' the person's age." E.E.O.C. v. Baltimore Cnty., 747 F.3d 267, 272 (4th Cir. 2014) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). For an ADEA claim to survive a Rule 12(b)(6) challenge, a plaintiff must "allege facts to satisfy the elements of an ADEA cause of action." Tickles v. Johnson, 805 F. App'x 204, 207 (4th Cir. 2020) (cleaned up) (quoting McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015)). The plaintiff's pleading of the statutory elements must be plausible and must rise "above the speculative level." See McCleary-Evans, 780 F.3d at 585 (citations omitted). That is, the "pleading standard established in Iqbal and Twombly applies." Woods v. City of Greensboro, 855 F.3d 639, 648 (4th Cir. 2017).

Here, Plaintiff Brunson must plausibly allege that (1) he is over the age of 40 and that (2) Livingstone College "fail[ed]

- 13 -

or refuse[d]" to hire him (3) "because of" his age. See 29 U.S.C. §§ 623(a)(1), 631(a). Plaintiff Brunson alleges that he was born in 1955, (Compl. (Doc. 1) at 4), which satisfies the first ADEA element. He also alleges that Defendant Livingstone and its agents failed or refused to hire him for an open position, (id. at 10), which satisfies the second ADEA element. The dispositive question before this court concerns the third element: whether Plaintiff's complaint contains factual allegations to support a reasonable inference, rising above the speculative level, that Defendant Livingstone's refusal to hire Plaintiff was "because of" his age. See McCleary-Evans, 780 F.3d at 585; accord Tickles, 805 F. App'x at 207–08 (applying standard to ADEA claim).

i.   **Plaintiff's Conclusory Allegations of Pretext and "Sabotage" Are Not Supported by Well-Pleaded Facts**

Plaintiff's allegations that Dr. Quinnett "manufacture[d] a reason" not to hire him and "sabotage[d]" his candidacy are conclusory allegations unsupported by well-pleaded facts. See Iqbal, 556 U.S. at 678–79; McCleary-Evans, 780 F.3d at 585–86. Plaintiff does not allege what "reason" Dr. Quinnett offered to "question Plaintiff's suitability for the position," (Compl. (Doc. 1) at 11), making it impossible for this court to

- 14 -

determine whether it is plausible that the "reason" was "manufactured" as pretext to cover for age-based discrimination.[6] Nor does Plaintiff allege a theory as to how Dr. Quinnett "sabotaged" his candidacy.

From Plaintiff's well-pleaded allegations, it is reasonable to infer that he was a serious candidate and at one time perhaps even the presumptive hire for the open position at Livingstone College. See supra Section I & n.2. These inferences are supported by Plaintiff's allegations that in his fifth interview he negotiated a salary with Dean Crockett, and in his sixth interview he was notified that his requested salary was approved by the VP of Academic Affairs. (Compl. (Doc. 1) at 8-9.) Additionally, as late as May 12, 2023, he and Dr. Quinnett exchanged emails discussing Plaintiff's "bio" and headshot for Livingstone's upcoming Music Festival commencing on July 31, 2023 - emails which appear to presume that Plaintiff would be employed by Livingstone. (Pl.'s Ex. LC3, Emails (Doc. 1-4) at 2-

---

[6] As part of his defamation claim, Plaintiff alleges that Livingstone's administrators informed the EEOC that their reason for not hiring Plaintiff was the poor reviews they received from his previous employer. (Compl. (Doc. 1) at 13; see also Pl.'s Ex. LC6, EEOC Response (Doc. 1-7).) It is unclear from the complaint whether Plaintiff alleges that this is the same "reason" that Dr. Quinnett "manufactured" to convince his colleagues at Livingstone "rescind[]" Plaintiff's employment offer. (Compl. (Doc. 1) at 11.) If it is, Plaintiff has not alleged any nonconclusory facts supporting his contention that this "reason" was "manufactured."

4; see also Compl. (Doc. 1) at 9 (alleging that Dean Crockett "communicated to Plaintiff that he would be brought on full-time in Fall semester of 2023, which would begin at the summer Music Festival beginning July 31st, 2023").)

Plaintiff speculates that Dr. Quinnett is responsible for Livingstone's cease in communication after May 13, 2023, but he offers no well-pleaded factual basis in support of his contentions that Dr. Quinnett "manufactured" a pretextual reason not to hire him or "sabotaged" his candidacy. Even liberally construing Plaintiff's complaint to allege upon information and belief that Dr. Quinnett advocated against Plaintiff's candidacy in some capacity and caused Livingstone's decisionmakers to hire a different candidate, Plaintiff's remaining well-pleaded allegations do not support a reasonable inference that Dr. Quinnett did so "because of" Plaintiff's age. See 29 U.S.C. §§ 623(a)(1); Tickles, 805 F. App'x at 207–08.

>    ii.  **Plaintiff's Allegations Do Not Support a Reasonable Inference that Livingstone Rejected Plaintiff's Candidacy "Because Of" his Age**

Plaintiff alleges that Dr. Quinnett was a "young" professor and that the applicant Livingstone hired for the open position was "much younger" than Plaintiff. (Compl. (Doc. 1) at 10–11.)

- 16 -

Standing alone, correlation between the identity of a decisionmaker and the hired candidate does not support a reasonable inference of discrimination. See McCleary-Evans, 780 F.3d at 586 ("While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is consistent with discrimination, it does not alone support a reasonable inference that the decisionmakers were motivated by bias." (emphasis in original)).

Plaintiff likewise alleges that he "would have been coming to Livingstone College with much more experience and knowledge of developing and directing a music department" than the "much younger" candidate who Livingstone hired. (Compl. (Doc. 1) at 11.) Indeed, well-pleaded allegations that a plaintiff is better qualified for the open position than the substantially younger candidate who was hired may support an inference of age-based discrimination. See Tickles, 805 F. App'x at 208; see also Lowman v. Md. Aviation Admin., No. CV JKB-18-1146, 2019 WL 133267, at *6 (D. Md. Jan. 8, 2019). However, "[n]otably absent" from Plaintiff's complaint are "specific allegations that would give rise to a reasonable inference of age-based discrimination" such as (1) specific allegations connecting Plaintiff's "experience and knowledge," (Compl. (Doc. 1) at 11), to the actual requirements of the open position, (2) specific

- 17 -

allegations about the "younger" candidate's allegedly inferior qualifications, and (3) specific allegations about the younger candidate's "proximity in age to his own." See Tickles, 805 F. App'x at 208. Without these details, this court is "left with mere speculation" about the relevance of Plaintiff's experience and knowledge to the actual requirements of the open position, the strength of Plaintiff's qualifications relative to those of the younger candidate, and the significance of the age gap[7] between them. See id.

In McCleary-Evans, the Fourth Circuit dismissed a plaintiff's Title VII claim for race and gender discrimination when the plaintiff, a Black woman passed over for two open positions with Maryland's Highway Administration, offered only conclusory allegations that the decisionmakers were biased, leaving gaps that could only be filled by "speculation as to why two 'non-Black candidates' were selected to fill the positions instead of her." McCleary-Evans, 780 F.3d at 586. In her complaint, McCleary-Evans alleged that she was "more than

---

[7] "In the age-discrimination context, . . . an inference [of discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996). Plaintiff's allegation that the hired candidate was "much younger" is conclusory and requires this court to accept his subjective impression that whatever age gap may have existed between the two candidates was legally "[]significant[]." See id.

qualified" for the open positions. Id. at 583. However, she "did not include any allegations regarding the qualifications or suitability of the persons hired to fill the two positions." Id. at 583–84.

The Fourth Circuit compared McCleary-Evans' pleadings to the allegations put forward by the plaintiff in Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002), writing:

> Swierkiewicz alleged specifically that the new chief underwriting officer was "less experienced and less qualified" for the position because he "had only one year of underwriting experience at the time he was promoted," whereas Swierkiewicz "had 26 years of experience in the insurance industry." . . . [T]his last detail is precisely the kind of allegation that is missing from McCleary-Evans' complaint . . . .

McCleary-Evans, 780 F.2d at 586 (citing Swierkiewicz, 534 U.S. at 508).

In the present case, Plaintiff's contention that he had "more" experience and knowledge than the younger candidate is vague, conclusory, and, like the allegations in McCleary-Evans, lacks specific factual support such as that provided by the plaintiff in Swierkiewicz – i.e., "26 years of experience in the

insurance industry" compared to "one year of underwriting experience." See id. (citation omitted).[8]

Without specific allegations, Plaintiff and this court "can only speculate that the person[] hired [was] not better qualified, or did not perform better during their interviews, or [was] not better suited based on experience and personality for the position[]." McCleary-Evans, 780 F.3d at 586. Accordingly, "[Plaintiff's] complaint 'stop[s] short of the line between possibility and plausibility of entitlement to relief.'" See id. (quoting Iqbal, 556 U.S. at 678); see also Tickles, 805 F. App'x at 206, 208 (affirming dismissal of ADEA complaint where plaintiff alleged that his comparators were "less qualified" but did "not allege the qualifications [for the position], his qualifications, those of [the comparators], or how theirs were inadequate" (quoting Tickles v. Johnson, No. 1:17CV709, 2018 WL 1896558, at *3 (M.D.N.C. Apr. 19, 2018), aff'd, 805 F. App'x 204 (4th Cir. 2020))).

In sum, Plaintiff's contentions that Dr. Quinnett sabotaged his candidacy, and that Livingstone College refused to hire him

_____

[8] Although the Swierkiewicz case was decided under a "pleading standard more relaxed than the plausible-claim standard required by Iqbal and Twombly," McCleary, 780 F.3d at 587, the Fourth Circuit's discussion, in McCleary, of Swierkiewicz is instructive as to what constitutes insufficient conclusory allegations and what constitutes specific, well-pleaded fact in the discrimination context.

Case 1:24-cv-00240-WO-LPA   Document 44   Filed 08/04/25   Page 20 of 30

because of his age, are conclusory allegations unsupported by well-pleaded facts or reasonable inference. Plaintiff's ADEA claim will be dismissed against Defendants Davis, Crockett, and Quinnett with prejudice because the ADEA does not provide a cause of action against these Defendants. See Birkbeck, 30 F.3d at 510-11. However, the claim will be dismissed against Defendant Livingstone College without prejudice, in acknowledgement that Plaintiff is a pro se litigant, that he appears to have additional factual allegations he seeks to introduce in support of his claim, (see, e.g., Docs. 22, 23, 28-1 through 28-7), and that with more specific factual allegations about his qualifications for the position, and his qualifications as compared to those of the younger candidate, it is conceivable that he could state a plausible ADEA claim for relief.

This court will not enter judgment for twenty (20) days to allow Plaintiff to submit, if he chooses, an amended complaint alleging an amended ADEA claim against Defendant Livingstone. See Britt v. DeJoy, 45 F.4th 790, 796 (4th Cir. 2022) ("[W]hen the district court believes a deficiency in a complaint can be cured, it should say so and grant leave to amend.").

### 2. Claim II: Promissory Estoppel

Plaintiff asserts a second claim for relief under the doctrine of promissory estoppel. (Compl. (Doc. 1) at 12–13.) "The doctrine of promissory estoppel is an equitable doctrine wherein a party that has reasonably relied on the promise of another may enforce the promise, absent valuable consideration, in order to avoid injustice." Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 591 (M.D.N.C. 2003) (citation omitted). Plaintiff alleges that Defendants repeatedly assured him he would be hired and, as a result, he "allowed other employment opportunities to expire with the expectation that his employment with Livingstone College . . . was secured and confirmed." (Compl. (Doc. 1) at 12–13.)

This court need not assess the plausibility of Plaintiff's allegations, for "promissory estoppel has not been officially recognized as an affirmative cause of action under North Carolina law." Fifth Ave. United Methodist Church of Wilmington v. N. Carolina Conf., Se. Jurisdiction, of United Methodist

<u>Church, Inc.</u>, 911 S.E.2d 106, 123 (N.C. Ct. App. 2024).[9] "Rather, '[t]he North Carolina cases which have applied the doctrine have only done so in a defensive situation, where there has been an intended abandonment of an existing right by the promisee. North Carolina case law has not approved the doctrine for affirmative relief.'" <u>Id.</u> (citation omitted); <u>see also</u> <u>Crosby v. City of Gastonia</u>, 682 F. Supp. 2d 537, 547 (W.D.N.C. 2010), <u>aff'd,</u> 635 F.3d 634 (4th Cir. 2011) ("[T]he clear law in North Carolina prohibits the use of promissory estoppel in an offensive manner.").

Because Plaintiff seeks to invoke the doctrine of promissory estoppel for affirmative relief, and because North Carolina courts do not recognize promissory estoppel as an affirmative cause of action, Plaintiff's claim will be dismissed against all Defendants.

_____

[9] "As a federal court exercising supplemental jurisdiction, the Court applies the choice of law rules of the forum state." <u>Atl. Specialty Ins. Co. v. Bindea</u>, 656 F. Supp. 3d 624, 638 (W.D. Va. 2023) (citations omitted). Defendants contend that North Carolina's promissory estoppel law is controlling, (<u>see</u> Doc. 13 at 6; Doc. 17 at 13; Doc. 36 at 8), and Plaintiff does not object, (<u>see,</u> <u>e.g.</u>, Doc. 21 at 9 (arguing that "Defendants also make bogus assertions that the doctrine or legal principle of promissory estoppel is not recognized in North Carolina" and proceeding to cite North Carolina caselaw)). "[W]here the parties have agreed to the application of the forum [state's] law, their consent concludes the choice of law inquiry." <u>Wiener v. AXA Equitable Life Ins. Co.</u>, 58 F.4th 774, 782 (4th Cir. 2023) (quoting <u>Am. Fuel Corp. v. Utah Energy Dev. Co.</u>, 122 F.3d 130, 134 (2d Cir. 1997)).

### 3.  **Claim III: Defamation**

Plaintiff asserts a third claim for relief for defamation. (Compl. (Doc. 1) at 13–14.) Plaintiff alleges that Defendant Quinnett, Defendant Crockett, and other "administrators of Livingstone College" made "libelous and defamatory statements of Plaintiff's person and character" during the EEOC's investigation of Plaintiff's charges against Livingstone College. (Id.) Plaintiff alleges that Defendants' actions have "negatively affected Plaintiff's right to pursue gainful employment." (Id. at 14.)

To state a defamation claim under North Carolina law,[10] a plaintiff must allege "that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." Demarco v. Charlotte-Mecklenburg Hosp. Auth., 268 N.C. App. 334, 343, 836 S.E.2d 322, 329 (2019) (citation omitted). However, "a defamatory statement made in the due course of a judicial proceeding is absolutely privileged and will not support a civil action for defamation," Jarman v. Offutt, 239 N.C. 468, 472, 80 S.E.2d 248, 251 (1954), so long as the

---

[10] Defendants again contend that North Carolina's law with respect to defamation is controlling, (see Doc. 13 at 7; Doc. 17 at 16–18; Doc. 36 at 8–9), and Plaintiff does not object, (see, e.g., Doc. 21 at 11 (citing the North Carolina Pattern Jury Instructions)).

statement "was sufficiently relevant to that proceeding," Harman
v. Belk, 165 N.C. App. 819, 824, 600 S.E.2d 43, 47 (2004). A
statement is "sufficiently relevant to that proceeding" unless
it is "so palpably irrelevant to the subject matter of the
controversy that no reasonable man can doubt its irrelevancy or
impropriety." Id. at 825, 600 S.E.2d at 48.

The term "judicial proceeding" encompasses "every
proceeding of a judicial nature before a competent court or
before a tribunal or officer clothed with judicial or quasi-
judicial powers." Jarman, 239 N.C. at 472, 80 S.E.2d at 251
(citations omitted). "An EEOC investigation . . . has regularly
been recognized as a quasi-judicial proceeding in which an
absolute privilege applies." Kingsdown, Inc. v. Hinshaw, No. 14
CVS 1701, 2015 WL 1441826, at *11 (N.C. Super. Mar. 25, 2015);
see also Edwards v. Parrish Tire Co., No. 1:18CV811, 2019 WL
4246671, at *3 (M.D.N.C. Sept. 6, 2019) (collecting cases).

Here, Plaintiff alleges that Defendants wrote "libelous and
defamatory" accusations about Plaintiff "on page 9 of their
response" to Plaintiff's EEOC charge, (Compl. (Doc. 1) at 13;
see also Pl.'s Ex. LC6, EEOC Response (Doc. 1-7)), and verbally
repeated those accusations during the EEOC's "Fact-Finding
Conference, held via Zoom," (Compl. (Doc. 1) at 14). Plaintiff
alleges that the defamatory accusations were about "Plaintiff's

- 25 -

professional career and character." (Id. at 13.) Plaintiff attaches an exhibit to his complaint which clarifies that the alleged defamatory statements were the statements Defendants proffered to the EEOC to explain their "legitimate non-discriminatory reason for [their] decision to not hire Dr. Brunson." (Pl.'s Ex. LC6, EEOC Response (Doc. 1-7).) Defendants wrote that they had "received concerning and unsatisfactory information from [Plaintiff's] previous employer," including that he "had only been employed there for nine months before his employment was terminated" and that his "performance had been the worst that the [previous employer] had seen in their twenty years of experience in higher education." (Id.)

Although Plaintiff does not allege any facts to rebut the truthfulness of Defendants' statements, (see generally Compl. (Doc. 1)), this court need not analyze whether those statements were plausibly "false," see Demarco, 268 N.C. App. at 343, 836 S.E.2d at 329 (stating elements of a defamation claim), because the statements were (1) made in the due course of a quasi-judicial EEOC proceeding, see Jarman, 239 N.C. at 472, 80 S.E.2d at 251; Kingsdown, Inc., 2015 WL 1441826, at *11, and (2) were "sufficiently relevant" to the EEOC proceeding, see Harman, 165 N.C. App. at 824, 600 S.E.2d at 47. The EEOC proceeding was conducted to investigate Plaintiff's race and age discrimination

- 26 -

charges against Livingstone College, (Pl.'s Ex. LC A, EEOC Charge (Doc. 1-1) at 1-3), and it is not "palpably irrelevant" for a defendant to proffer to the EEOC a nondiscriminatory explanation for their actions during such a proceeding. See Harman, 165 N.C. App. at 825, 600 S.E.2d at 48. Accordingly, Defendants' statements are "absolutely privileged and will not support a civil action for defamation." Jarman, 239 N.C. at 472, 80 S.E.2d at 251.[11]

Plaintiff's claim for defamation will be dismissed against all Defendants.

## V. PLAINTIFF'S MOTION ENTITLED "REQUEST FOR THE COURT TO ORDER DEFENDANTS TO SUBMIT A LEGITIMATE CORPORATE DISCLOSURE STATEMENT"

Defendant Livingstone College filed a Corporate Disclosure Statement on June 14, 2024, (Doc. 10), in accordance with Local Civil Rule 7.7, see LR7.7. The Corporate Disclosure Statement

---

[11] Plaintiff also alleges that Livingstone College has been "communicating their lies to other possible employers in the academic environment." (Compl. (Doc. 1) at 14.) This allegation is vague and does not identify a specific instance of publication to a non-privileged third party. See Demarco, 268 N.C. App. at 343, 836 S.E.2d at 329 (stating elements of a defamation claim). Even if, liberally construed, this allegation satisfied the publication element, Plaintiff has still not "set forth sufficient specific facts to support [his] claim that the statements made by defendants were false." Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29, 568 S.E.2d 893, 898 (2002), writ denied, rev. denied, appeal dismissed, 357 N.C. 163, 580 S.E.2d 361 (2003).

prompts the question: "Does party have any parent corporations?"
(Doc. 10 at 1.) Defendant answered "NO." (Id.)

Thereafter, Plaintiff filed a motion entitled "Plaintiff's
Objections to Defendants' Motion to Dismiss and Request for the
Court to Order Defendants to Submit a Legitimate Corporate
Disclosure Statement," (Doc. 28).[12] Plaintiff contends that
Defendant Livingstone College is "owned and affiliated with the
African Methodist Episcopal Zion Denomination . . . , and as
such, Defendants are required to submit the specified
information of parent and grandparent corporations." (Id. at 2.)
In support of his position, Plaintiff submits an exhibit of
Livingstone College's Wikipedia page, which states that
"Livingstone College . . . is affiliated with the African
Methodist Episcopal Zion Church" and that Livingstone College's
predecessor institution, the Zion Wesley Institute, "was founded
by the African Methodist Episcopal (AME) Zion Church." (Pl.'s
Ex. LC1, Wikipedia Page (Doc. 28-4) at 1.)

Plaintiff's exhibit does not support his contention that
Defendant Livingstone College is "owned by the African Methodist
Episcopal Zion Denomination," (Doc. 28 at 16), nor does it

---

[12] For any future motions Plaintiff files with this court,
Plaintiff is instructed to follow Local Civil Rule 7.3. Among
other requirements, Local Rule 7.3 provides that "[e]ach motion
shall be set out in a separate document." LR7.3(a).

support his contention that Defendant failed to "answer[]
truthfully," (id. at 2), in its Corporate Disclosure Statement.
As such, Plaintiff's motion entitled "Request for the Court to
Order Defendants to Submit a Legitimate Corporate Disclosure
Statement," (Doc. 28), will be denied.

## VI.  **<u>CONCLUSION</u>**

Plaintiff failed to effect sufficient service of process
against Defendant Randall, and thus the complaint will be
dismissed against Defendant Randall without prejudice pursuant to
Rule 12(b)(5). Plaintiff failed to state a plausible claim for
relief against the remaining Defendants. Plaintiff's ADEA claim,
promissory estoppel claim, and defamation claim will be dismissed
against Defendants Davis, Crockett, and Quinnett with prejudice
pursuant to Rule 12(b)(6). Plaintiff's promissory estoppel and
defamation claims will be dismissed against Defendant Livingstone
College with prejudice pursuant to Rule 12(b)(6). Plaintiff's
ADEA claim will be dismissed against Defendant Livingstone
College without prejudice pursuant to Rule 12(b)(6).

For the foregoing reasons, **IT IS THEREFORE ORDERED** that
Motion to Dismiss By Defendants Crockett and Quinnett, (Doc. 12),
is **GRANTED.** Each of Plaintiff's claims is **DISMISSED WITH
PREJUDICE** against Defendants Crockett and Quinnett.

**IT IS FURTHER ORDERED** that Livingstone College and Dr. Anthony Davis' Motion to Dismiss Plaintiff's Complaint, (Doc. 16), is **GRANTED.** Each of Plaintiff's claims is **DISMISSED WITH PREJUDICE** against Defendant Davis. Plaintiff's promissory estoppel and defamation claims are **DISMISSED WITH PREJUDICE** against Defendant Livingstone College. Plaintiff's ADEA claim is **DISMISSED WITHOUT PREJUDICE** against Defendant Livingstone College. This court will not enter judgment for twenty (20) days to allow Plaintiff to submit, if he chooses, an amended complaint alleging an amended ADEA claim against Defendant Livingstone.

**IT IS FURTHER ORDERED** that Motion to Dismiss by Defendant Randall, (Doc. 35), is **GRANTED.** Each of Plaintiff's claims is **DISMISSED WITHOUT PREJUDICE** against Defendant Randall.

**IT IS FURTHER ORDERED** that Plaintiff's motion entitled "Request for the Court to Order Defendants to Submit a Legitimate Corporate Disclosure Statement," (Doc. 28), is **DENIED.**

This the 4th day of August, 2025.

_____
United States District Judge

- 30 -